IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HERITAGE PARK CONDOMINIUM ASSOCIATION, ) ) ) Plaintiff, ) ) vs. ) ) GREATER NEW YORK MUTUAL ) INSURANCE COMPANY, ) ) Defendant. ) | Case No. 23 C 3916 |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Heritage Park Condominium Association has sued Greater New York Mutual Insurance Company (GNY) for breach of contract and bad faith in violation of an Illinois statute, 215 ILCS 5/155. According to Heritage Park, it sustained a loss covered by its insurance policy with GNY; it contends that GNY breached the insurance contract by failing to pay for the replacement cost of the damaged property. Heritage Park further alleges that GNY acted vexatiously and unreasonably by delaying its investigation into the facts and circumstances underlying the insurance claim. GNY has moved for summary judgment on both claims. For the reasons set forth below, the Court denies GNY's motion.

### Background

This case stems from a property insurance dispute regarding alleged storm damage to sixteen residential condominium buildings in the Heritage Park

Condominium Association, which is located in Lindenhurst, Lake County, Illinois. In the evening between July 22 and 23, 2022, a hailstorm occurred throughout Lake County. Heritage Park claims to have sustained substantial wind and hail related damage as a result of this storm.

About two months earlier, on or about May 12, 2022, GNY issued an insurance policy to Heritage Park that included, among other benefits, property and liability coverage. The policy was effective from May 14, 2022 to May 14, 2023. Heritage Park alleges that, because the storm damage occurred during the policy coverage period, it is entitled to payment from GNY to cover this damage.

Heritage Park contends that sixteen units suffered damage to their roofs, including dents to roof vents, granular loss, and spots on shingles. Heritage Park filed a claim with GNY, which dispatched Vince Fratinardo and Andrew Dickson to inspect the damage and produce a report. GNY subsequently denied the claim, and Heritage Park retained Semper Fi Public Adjusters to represent it on its claim. GNY again denied the claim, and Heritage Park filed the present suit.

GNY now moves for summary judgment on both of Heritage Park's claims. GNY also seeks to exclude the testimony of two of Heritage Park's experts: Dr. Matthew Bunkers and Michael Ogden.

## Discussion

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists when, after drawing all reasonable inferences from the record in favor of the nonmoving party, a reasonable trier of fact could return a verdict for the nonmovant. *Id.*

The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the "party that bears the ultimate burden at trial must show that there is evidence creating a genuine issue of material fact." *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). If the party with the burden of proof cannot show that its claim or defense is factually supported, summary judgment is appropriate. *Celotex*, 477 U.S. at 323–24.

**A.      Breach of contract**

An insured bears the initial burden of proving that its claim is within the coverage of its insurance policy. *Cincinnati Ins. Co. v. Flanders Elec. Motor Servs., Inc.*, 40 F.3d 146, 151 (7th Cir. 1994); *see also Travelers Pers. Ins. Co. v. Edwards*, 2016 IL App (1st) 141595, ¶ 22, 48 N.E.3d 298, 303. If the insured satisfies this burden, the insurer then has the burden to show that the loss "was limited or excluded by a contract provision." *Travelers Pers. Ins. Co.*, 2016 IL App (1st) 141595, ¶ 21, 48 N.E.3d at 303.

GNY does not dispute that Heritage Park's policy, which covers direct physical loss or damages to covered property, covers the type of hail and wind damage that Heritage Park alleges. Nor does GNY dispute that the sixteen condominiums allegedly damaged during the July 22–23 storm were covered by the policy at the time. Instead, GNY contends that Heritage Park has failed to show that its claimed losses were caused by the July 22–23 storm.

To establish that damage was a direct loss caused by wind and hail from a storm, a plaintiff must put forth evidence that (1) storm conditions of sufficient severity to have caused the damage alleged occurred in the vicinity of the damaged property during the time when the damage is alleged to have occurred, and (2) the storm caused the damage alleged. *See Couri v. Home Ins. Co.*, 53 Ill. App. 3d 593, 596–97, 368 N.E.2d 1029, 1032 (1977). Put differently, Heritage Park must put forth evidence that the July 22–23 storm had wind of a sufficient velocity and force, and hail of a sufficient size, to have caused the damage alleged and that those conditions were present when the storm was passing over the Heritage Park condos. Heritage Park must also show that the wind and hail from the July storm caused the particular damage alleged— specifically, the dents to metal roof fixtures, granular loss, and shingle damage. GNY contends that Heritage Park cannot meet either of these requirements.

The Court finds that Heritage Park has shown genuine disputes of material fact that make summary judgment inappropriate. Regarding proof of the storm, it offers the expert testimony of Dr. Matthew Bunkers. Dr. Bunkers provides an expert report outlining the trajectory of a wind and hail storm that passed over the Heritage Park condos in the evening between July 22 and July 23, 2022. Dr. Bunkers opines in his report that the likely maximum wind velocity was between 45–50 miles per hour, with a potential maximum velocity of 55 miles per hour. During his deposition, he testified that, upon reexamining the data, the maximum potential velocity of the wind was 60 miles per hour. Dr. Bunkers also opines that the likely maximum hail size ranged from 0.6 to 0.9 inches in diameter, with a possible maximum diameter of 1.0 inch. According to Dr. Bunkers, the National Weather Service defines a severe storm as one that produces

winds of at least 58 miles per hour or hail of at least 1.0 inch in diameter, or both.

Regarding causation, Heritage Park has provided the deposition testimony of multiple contractors and construction experts that, taken together, support its position that the July 22–23 storm caused the damage alleged. Specifically, Heritage Park offers the findings of Michael Ogden, who found, based on Dr. Bunkers's report and personal observations, that hail and wind caused the claimed damage to the property. In his report, Ogden notes that wind damage can occur to shingle roofs in the form of "tearing, creasing, ripping and displacement of the shingles." Pl.'s App. in Supp. of Resp. to Def.'s Mot. for Summ. J., Ex. 21 (expert report of Michael Ogden). Heritage Park has also provided the deposition testimony of Garrett Beard, a representative of American Building Contractors (ABC), who visited the condos numerous times over the past several years to perform, among other things, repairs to the roofs. Heritage Park regularly worked with ABC to address repairs to the exterior of the condos, and Beard visited the Heritage Park condos on July 28, 2022 to investigate a leak in one of the condos at issue. During that visit, Beard testified that he "noticed some evidence of hail damage," which he reported to ABC's commercial sales team. *Id.*, Ex. 3 at 15:9–15:12 (deposition of Garrett Beard). Beard had most recently visited the Heritage Park condos in March 2022 and did not report hail damage at that time. Beard further testified that he noticed areas of greater granule loss than would be present due to normal wear and tear: "[T]hey're the typical granular loss from wear and tear and aging, and then there's spots which are, basically, round little spots where there was [sic] granules knocked free heavier in those spots from the hail, which we believe was from the hail." *Id.*, Ex. 3 at 50:10–50:14. According to Beard, damage to shingles like what

he observed, also referred to as "bruises," can lead to leaks. *Id.*, Ex. 3 at 21:20–21:23. Regarding loss of shingles, Beard testified that "in general . . . it's always wind that will blow shingles off." *Id.*, Ex. 3 at 19:12–19:13. In addition, Vince Fratinardo, GNY's damages and causation expert, noted in his expert report that, during his inspection of the Heritage Park condos in October and November 2022, numerous units had lost shingles.

Based on the combination of these experts' observations and analyses, Heritage Park has provided evidence sufficient to permit a reasonable jury to find that a severe wind and hail storm passed over the condos on the night of July 22-23, 2022. And shortly after this storm, Beard and Fratinardo noted hail damage to the roofs, as well as blown-off shingles, which, Beard says, are "always" the result of wind damage. The Court finds that Heritage Park has provided evidence sufficient to permit a reasonable jury to find that the July 22–23 storm caused the alleged damage. Summary judgment is therefore inappropriate.

As a final matter, GNY contends that Heritage Park has failed to segregate the hail damage noted by Fratinardo from any existing damage that predated the July storm. But, as outlined above, the statements of Beard indicate that hail damage was not present in March 2022. And based on Fratinardo's report, as of October or November 2022, numerous roofs had lost shingles, and other aspects of the roofs showed hail damage. Finally, Ogden's report includes a hail history report obtained from StormerSite that shows that the two other hailstorms that occurred between Beard's visit in March and Fratinardo's visits in October and November were not severe enough to have caused the hail damage alleged; the hail damage to the roofs includes

6

indentations of approximately 0.75 inches in diameter. According to Ogden, the impressions made by hail impacts are smaller than the diameter of the hail that caused the indentation. Therefore, indentations of 0.75 inches indicate hail of a larger size, closer to 1.0 inch in diameter. The hailstorms indicated by the StormerSite report that occurred between March and November 2022 show maximum hail size of 0.75 inches in diameter for both storms. Therefore, Heritage Park has presented enough evidence to permit a finding that the July 22–23 storm caused the alleged damage.

For these reasons, GNY is not entitled to summary judgment.

**B.     Expert testimony**

GNY seeks to exclude the testimony of two of Heritage Park's experts: Dr. Matthew Bunkers, Heritage Park's meteorological expert, and Michael Ogden, Heritage Park's damages and causation expert.

### 1.     Dr. Matthew Bunkers

GNY contends that the testimony of Dr. Bunkers should be excluded under Federal Rule of Evidence 702 because it "fail[s] to satisfy the basic requirement that opinions must be held to a reasonable degree of certainty to be admissible." Def.'s Br. in Supp. of Mot. for Summ. J. at 8.[1] According to GNY, Dr. Bunkers's findings that there was a seventy percent likelihood that the storm conditions were severe enough to have caused the damage are insufficient to satisfy Rule 702.

This argument is unpersuasive. The key inquiry on the admissibility of the testimony of an expert under Rule 702, and the accompanying standard laid out in

---

[1] GNY does not challenge Dr. Bunkers's qualifications as a meteorologist. See Def.'s Br. in Supp. of Mot. for Summ. J. at 8.

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, is whether his or her testimony is reliable and relevant. *See* 509 U.S. 579, 592–93 (1993). Reliability does not depend on whether the expert proffers an opinion with 100 percent certainty; rather, the Court asks whether "the expert is using a valid methodology (scientific or otherwise), that there is sufficient data to justify the use of the methodology in the particular case, and that the expert applied the methodology appropriately." *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 765 (7th Cir. 2013). The determination of whether an expert used reliable methods "does not ordinarily extend to the reliability of the conclusions those methods produce— that is, whether the conclusions are unimpeachable." *Id.* Accordingly, an expert may offer testimony based on a validly applied methodology that is still subject to doubt because "[i]t is the role of the jury to weigh these sources of doubt." *Id.* at 766.

      The Court finds that Dr. Bunkers's testimony is based on a reliable methodology and supported by sufficient data such that his testimony is admissible under Rule 702. Dr. Bunkers was retained to opine on the severity of the storm on the date in question. His findings are based on verified weather data obtained from the National Centers for Environmental Information Storm Events Database and are supported by authoritative studies on how to analyze this data. *See* Pl.'s App. in Supp. of Resp. to Def.'s Mot. for Summ. J., Ex. 18 (weather report prepared by Dr. Bunkers). The mere fact that Dr. Bunkers qualifies that he is not 100 percent certain is not a basis to preclude him from offering testimony at trial. Should GNY wish to challenge the solidity of Dr. Bunkers's findings, the appropriate place to do so is on cross-examination. *See Stollings*, 725 F.3d at 766 ("The judge should permit the jury to weigh the strength of the expert's conclusions . . . .").

8

Accordingly, the Court declines to exclude Dr. Bunkers's testimony.

2. **Michael Ogden**

GNY next contends that the testimony of Michael Ogden should be excluded because he is unqualified and his opinions are unreliable. GNY asserts that because Ogden lacks "education or training in forensic evaluation of hail or wind damage," he fails to meet the requirements of Rule 702. Def.'s Br. in Supp. of Mot. for Summ. J. at 9; *see also* Fed. R. Evid. 702 (requiring an expert be qualified by "knowledge, skill, experience, training, or education"). GNY also argues that, even if Ogden is qualified to testify about the cause and extent of the hail and wind damage, his findings are unreliable because he relied on Dr. Bunkers's weather report in reaching his conclusions. On the latter point, GNY effectively contends that, because Dr. Bunkers's testimony is inadmissible, Ogden's testimony relying on Dr. Bunkers's findings is likewise inadmissible.

Again, the Court finds GNY's argument unpersuasive. First, Ogden's experience and training, as shown by his CV, reflects that he is qualified to render an opinion about the cause and extent of wind and hail damage allegedly caused by the July 22–23 storm. *See* Pl.'s App. in Supp. of Resp. to Def.'s Mot. for Summ. J., Ex. 20 (curriculum vitae of Michael Ogden). Specifically, Ogden's CV reflects that he has over twenty years of experience in construction and restoration. Since 2005, Ogden has been the president and managing director of operations for a construction and restoration business that focuses on wind and hail damage, among other things. Further, Ogden has multiple levels of training in Xactimate, a program used to estimate the cost of repairs, as well as licensing and certification as a public adjustor and certified

9

contractor. Accordingly, the Court finds that Ogden is qualified to testify based on his training and experience. Should GNY wish to challenge Ogden's qualifications, it may do so on cross-examination.

The Court also finds that Ogden's expert opinion is reliably based on his personal observations and the information contained in Dr. Bunkers's report. The Court has already explained why Dr. Bunkers may testify about his findings that a storm with sufficiently severe wind and hail passed over the Heritage Park condos at the time in question. Because that testimony is admissible, Ogden—and any other expert—may appropriately rely on it to form his own opinion. *See Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002) ("[I]t is common in technical fields for an expert to base an opinion in part on what a different expert believes on the basis of expert knowledge not possessed by the first expert . . . ."). Further, Ogden physically inspected the site for damage and relied on authoritative publications discussing how to assess hail damage to reach his conclusions. Again, should GNY wish to attempt to undermine Ogden's findings, the proper vehicle to do so is cross-examination.

For these reasons, the Court declines to exclude Ogden's expert testimony. In sum, then, both Dr. Bunkers and Ogden are permitted to testify regarding the findings in their expert reports as supplemented by their deposition testimony.

**C.    Illinois state law claim**

Section 155 of the Illinois Insurance Code states:

> (1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any

>one of the following amounts: (a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs; (b) $60,000; (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

25 ILCS 5/155. Under section 155, an insured may "seek extracontractual damages from an insurer in any case in which at least one of three issues remains undecided: (1) the insurer's liability under the policy, (2) the amount of the loss payable under the policy, or (3) whether there was an unreasonable delay in settling a claim." *Creation Supply, Inc. v. Selective Ins. Co. of Se.*, 995 F.3d 576, 578 (7th Cir. 2021).

Heritage Park contends that GNY acted vexatiously and unreasonably by intentionally delaying and prolonging its investigation into the facts and circumstances underlying its claim. GNY argues that it is entitled to summary judgment on this claim for two reasons. First, GNY contends, "the tort of bad faith is not a separate and independent tort action that is recognized in Illinois." *Hoover v. Country Mut. Ins. Co.*, 2012 IL App (1st) 110939, ¶ 39, 975 N.E. 638, 646. Thus, GNY argues, if the Court grants summary judgment in its favor on Heritage Park's breach of contract claim, then it must also grant summary judgment on the section 155 claim. Second, GNY argues that even if the breach of contract claim survives, Heritage Park has failed to put forth evidence showing that GNY behaved "vexatious[ly] and unreasonabl[y]" as required under section 155.

GNY's first argument for summary judgment on the section 155 claim fails because the Court has allowed Heritage Park's breach of contract claim to proceed to trial. Regarding GNY's second argument, there is a genuine factual dispute over whether GNY acted vexatiously and unreasonably. Heritage Park has put forth

11

evidence that it contends shows that GNY's damages and causation expert, Vince Fratinardo, acknowledged that there was damage to the roofs caused by hail when he inspected the property in October and November 2022. *See* Pl.'s App. in Supp. of Resp. to Def.'s Mot. for Summ. J., Ex. 25 (deposition of Andrew Dickson). Specifically, Andrew Dickson, who assisted Fratinardo during his inspection of the Heritage Park condos, drafted the repair estimate for each building and testified during his deposition that all costs in his report are attributable to hail damage. *See id.*, Ex. 25 at 36:4–36:6 ("[P]er Vince [Fratinardo's] report, the building sustained localized hail damage, and that's what informed the preparation of this estimate."). Heritage Park has a viable claim that GNY ignored the findings of its own expert in denying or continuing to deny coverage.

## Conclusion

For the reasons stated above, the Court denies GNY's motion for summary judgment on all of Heritage Park's claims [dkt. no. 87]. The case remains set for a telephonic status hearing on March 5, 2025 to discuss logistics relating to the April 28, 2025 trial date.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 3, 2025